UNITED STATES, Appellee,

v.

Charles M. WYNN, Private, U. S. Army, Appellant.

Dkt. No. 41,098.
SPCM 14721.

U. S. Court of Military Appeals.

Aug. 9, 1982.

For Appellant: *Captain Dennis E. Brower* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Raymond C. Ruppert, Captain Richard W. Vitaris* (on brief); *Major James F. Nagle, Captain David M. England.*

For Appellee: *Captain Thomas E. Booth* (argued); *Colonel R. R. Boller, Major John T. Edwards, Captain Paul T. Cascio* (on brief); *Major Ted B. Borek, Major Paul G. Thomson, Captain Michael C. Chapman.*

*Opinion of the Court*

FLETCHER, Judge:

Appellant was tried by special court-martial in February 1980 at Fort Hood, Texas. Contrary to his pleas, he was found guilty of housebreaking, larceny, and absence without leave, in violation of Articles 130, 121, and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 930, 921, and 886, respectively. The members sentenced appellant to a bad-conduct discharge, confinement at hard labor for 6 months, forfeiture of $299.00 pay per month for 6 months, and reduction to the lowest enlisted pay grade. The convening authority approved this sentence. On March 25, 1981, the United States Army Court of Military Review affirmed these findings of guilty and the sentence. 11 M.J. 536.

The Court of Military Review found the following facts which are pertinent to the granted issue of law in this case:

> During the noon break on the eleventh day of October 1979, Private First Class Todd O. Preston returned to his barracks at Fort Hood, Texas and noticed that his stereo equipment was missing from his locked room. There was no sign of a forced entry. Preston promptly reported the theft to the appropriate authorities.

> Special Agent John Kanzler, a criminal investigator, was detailed to investigate the incident. He interviewed Specialist Four Gregory Johnson who informed him that he had seen a Private Larry Bray leave the barracks area with a duffle bag containing a large, square object sometime between 1100 and 1215 hours. Based on other information, Kanzler had concluded the crime was committed during that period. Johnson told Kanzler that he saw Bray place the duffle bag in an automobile which he believed belonged to the appellant. [The car in fact belonged to another soldier.] Kanzler later inspected the car, which had been moved after Johnson's initial observation, and saw an empty duffle bag in the back seat. Kanzler also determined that Bray had access to the first sergeant's barracks keys and that both Bray's and the appellant's movements were unaccounted for during the time of the theft.

> At this time, Kanzler, believing that he had probable cause, directed a military policeman to apprehend the appellant. This was accomplished. The appellant was taken to Kanzler's office where he was advised of his right to counsel and of his right to remain silent. After making an oral statement admitting his involvement in the theft, the appellant accompanied Kanzler to an off-post apartment and released the stolen property to him. The appellant then signed a written confession. Nineteen days later, the appellant, after being advised of his rights, made another incriminating statement.

*Id.* at 537.

The Court of Military Review, based on these facts, held that appellant had been illegally arrested on October 11, 1979. It also ruled that the initial confession he made to police investigators at that time was tainted by that illegal arrest and should not have been admitted by the military judge. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824

(1979). Nevertheless, it affirmed his conviction on the basis of a subsequent confession made by appellant 19 days later which was admitted at trial. It further concluded that, although the first confession and other evidentiary fruits of the illegal arrest were improperly admitted at trial, this second confession satisfied them beyond a reasonable doubt that such errors were harmless. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Ward*, 1 M.J. 176 (C.M.A.1975).

This Court granted appellant's petition for review on the following issue:

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED IN DETERMINING THAT THE TAINT ARISING FROM THE ILLEGAL APPREHENSION AND THE FIRST CONFESSION AND SEIZURE OF EVIDENCE (PROSECUTION EXHIBITS 2, 5, 6 and 7), WAS SUFFICIENTLY ATTENUATED TO PERMIT ADMISSION, AT THE APPELLANT'S COURT-MARTIAL, OF A SECOND CONFESSION OBTAINED 19 DAYS LATER (PROSECUTION EXHIBIT 4).

In particular, appellant asserts that "the lower [appellate] court failed to look at all the proper standards in" reaching its conclusion of sufficient attenuation. Furthermore, he contends that the record of trial does not support the lower court's findings that intervening circumstances existed in this case which demonstrate attenuation. Although both these contentions relate to the propriety of the lower court's ruling as to admission of the second confession, they will be treated individually by this Court.

I

■ As a starting point, we note that the Court of Military Review expressly found:

The Government established that the appellant was adequately advised of his Article 31, 10 U.S.C.A. § 831 and *Miranda* rights and that the statements were oth-

erwise voluntary under the Fifth Amendment.

11 M.J. at 537–38 n.4 [1]. Instead, appellant's initial statement was found inadmissible as a result of a violation of his fourth amendment rights. *See United States v. Ravine*, 11 M.J. 325 (C.M.A.1981). Moreover, the admissibility of his second confession is likewise challenged on fourth amendment grounds. The standards which appellant contends were overlooked by the lower court in its attenuation analysis were drawn from cases where a challenged confession or admission was found inadmissible as a result of earlier statements taken in violation of Article 31, 10 U.S.C. § 831. *See United States v. Ricks*, 2 M.J. 99 (C.M.A.1977); *United States v. Nargi*, 2 M.J. 96 (C.M.A. 1977). *See also United States v. Seay*, 1 M.J. 201 (C.M.A.1975). An attenuation analysis conducted as a result of a violation of the fifth amendment serves policies and interests distinct from those raised in the context of a fourth amendment violation. *Brown v. Illinois*, 422 U.S. 590, 600–01, 95 S.Ct. 2254, 2260, 45 L.Ed.2d 416 (1975); *United States v. Brookins*, 614 F.2d 1037, 1046–47 (5th Cir. 1980). Accordingly, we reject as inappropriate the indiscriminate suggestion of appellant that these fifth-amendment-type standards of attenuation control the present case. *See Michigan v. Tucker*, 417 U.S. 433, 445 n.19, 94 S.Ct. 2357, 2364 n.19, 41 L.Ed.2d 182 (1974).

Appellant, perhaps sensing some incongruity, nonetheless asserts that inadmissibility of his first confession on fourth amendment grounds dictates the conclusion that his second confession, as a result and fruit of his first confession, is similarly inadmissible. *See Dunaway v. New York*, *supra*, 442 U.S. at 203 n.2 and 218 n.20, 99 S.Ct. at 2252 n.2 and 2260 n.20; *Brown v. Illinois*, *supra*, 422 U.S. at 605 n.12, 95 S.Ct. at 2262 n.12. He particularly notes that his second confession was substantially similar

---

1. The propriety of this ruling is not an issue granted for review by this Court. Such a finding is a threshold requirement for fourth-amendment analysis without which the granted issue need not have been addressed. *Taylor v.*

*Alabama*, —— U.S. ——, ——, 102 S.Ct. 2664, 2667, 72 L.Ed.2d —— (1982); *Dunaway v. New York*, 442 U.S. 200, 217, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1979).

to his initial confession made during his illegal arrest. He also points out that his second confession was a clarification or continuation of his initial confession and it was extracted from him by the same police officer who received his earlier statement. On this basis and notwithstanding the 19-day period between his illegal arrest and the second confession, he contends that the second confession was tainted by the continuing effects of his unconstitutional custody. *See Brown v. Illinois, supra* at 597, 95 S.Ct. at 2258.

■ In addressing this argument, we must first note that one factor to be considered in a fourth-amendment analysis of attenuation is "[t]he temporal proximity" between "the [illegal] arrest and the [challenged] confession." *Brown v. Illinois, supra* at 603–04, 95 S.Ct. at 2261–62; *see Rawlings v. Kentucky*, 448 U.S. 98, 107–08, 100 S.Ct. 2556, 2562–63, 65 L.Ed.2d 633 (1980); *Dunaway v. New York, supra*, 442 U.S. at 218, 99 S.Ct. at 2259; *United States v. Ravine, supra* at 330. The general idea behind this factor is "that the mere passage of time between the arrest and the confession increases the likelihood of the confession being untainted." 3 LaFave, *Search and Seizure* § 11.4(b), p. 633 (1978). Of course, the significance of this factor may vary depending on the particular circumstances in each case. *See Taylor v. Alabama*, —— U.S. ——, ——, 102 S.Ct. 2664, 2667, 72 L.Ed.2d —— (1982). In both *Brown* and *Dunaway*, the Supreme Court relied in part on a short period of time (several hours) between the illegal arrest and the accused's initial statement to find no attenuation. *Cf. Rawlings v. Kentucky, supra.* It also held that a successive statement made one day later while the accused was still in custody and where no intervening circumstances occurred was similarly inadmissible as a direct result and fruit of his first confession.

■ Such rulings cannot reasonably be construed to mean that "making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed." *United States v. Bayer*, 331 U.S. 532, 541, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654 (1947). As in *Brown* and *Dunaway*, appellant "let the cat out of the bag" by voluntarily confessing when under illegal arrest. *See United States v. Bayer, supra* 331 U.S. at 540, 67 S.Ct. at 1398. However, unlike *Brown* and *Dunaway*, appellant was then released from his illegal custody for a period of approximately 19 days before he was again called in for questioning and confessed again. In these circumstances, we believe "[t]he temporal proximity" between his illegal "arrest and [second] confession," *Brown v. Illinois, supra* 422 U.S. at 603, 95 S.Ct. at 2261, must still be evaluated to determine whether the conditions which made his first statement inadmissible carried over to invalidate his subsequent statement. *United States v. DePalma*, 461 F.Supp. 800, 835 (S.D. New York 1978); *see United States v. Weisman*, 624 F.2d 1118, 1125–26 (2nd Cir. 1980); *United States v. Garrett*, 495 F.Supp. 159, 166–67 (S.D. Texas 1980). As indicated above, even where the illegal custody is continuous, *Brown* and *Dunaway* require the full attenuation analysis.

Turning to the decision of the Court of Military Review, we note that it did not expressly articulate the impact appellant's earlier confession had on its analysis of attenuation. Such an omission, however, is not sufficient basis for this Court to conclude that the lower court did not even consider the additional shadow of appellant's initial confession in its decision. Unquestionably, the lower court was aware that this initial confession had been made by appellant during his illegal arrest and was inadmissible as a result of it. Yet there was also other evidence in the record of trial from which the lower court could conclude that this period of time increased the likelihood that his second confession was untainted. *See Taylor v. Alabama, supra* —— U.S. at ——, 102 S.Ct. at 2667.

■ In particular the record indicates that appellant, although in custody for questioning for seven hours, was then released for the remainder of this 19-day peri-

od prior to his second confession. The length of this period of release and the absence of custodial conditions are facts indicating attenuation. *See Rawlings v. Kentucky, supra; Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In addition, prior to making his first confession, appellant was advised that he had a right to see a lawyer. After his release from arrest, he had the opportunity to see a lawyer at the base legal office or consult with anyone else about this investigation. *See United States v. DePalma, supra* at 835. There is also evidence in the record which supports the findings by the Court of Military Review that the Government had not hounded or intimidated appellant during this period to make additional statements. *See United States v. Weisman, supra.* Finally, prior to his second statement, he was again warned of his legal rights which he formally waived in writing. *United States v. Weisman, supra.* Even considering the earlier effects of appellant's illegal arrest, we cannot say on the basis of this record that the Court of Military Review erred as a matter of law in concluding the 19-day period showed some attenuation.

## II

Appellant also challenges the finding of the lower court that intervening circumstances existed in this case which dissipated the taint of his illegal arrest on his second confession. He notes that there was no evidence of record that appellant actually knew his co-actor Bray confessed prior to his making his second confession. Accordingly, he asserts this confession could not be an intervening circumstance which influenced him in his decision to make a second confession. *See Taylor v. Alabama, supra* —— U.S. at ——, 102 S.Ct. at 2667. In addition, he notes that the witness Bradley was intimately involved in the theft from the beginning and he was aware of this fact. Accordingly, he argues that his admissions to this witness prior to his illegal arrest had no weight in his decision to make his second confession 19 days later.

■ The Court of Military Review has unique fact-finding powers which it may utilize to resolve questions of fact raised incident to an attenuation analysis. Article 66, UCMJ, 10 U.S.C. § 866; *see Rawlings v. Kentucky, supra* 448 U.S. at 106–07, 100 S.Ct. at 2562; *Brown v. Illinois, supra* 422 U.S. at 604, 95 S.Ct. at 2262. If some evidence in the record of trial supports these factual conclusions made by the lower court, we as a court of law are bound to accept its determinations. *See United States v. Wagner,* 7 M.J. 420, 421 (C.M.A. 1979).

■ Appellant contends that Bray's confession, as a matter of law, cannot be properly considered an intervening circumstance because it was not directly established as a matter of fact that he knew about this confession prior to his own confession on October 30, 1979. The testimony at trial of the witness Bradley established that appellant and Bray were co-actors in the charged offense who discussed the offense with him just prior to their arrests. It was also established at trial that appellant and Bray lived on the same floor. It was also clear that Bray and appellant were released by the Criminal Investigation Division (CID) agents after their arrests and confessions on October 11, 1979. We find this was sufficient circumstantial evidence from which the lower court could conclude that appellant also had knowledge of Bray's confession prior to his later visit with the police on October 30, 1979. *See* para. 138*b*, Manual for Courts-Martial, United States, 1969 (Revised edition).

Appellant also submits that his admission to the witness Bradley could have had no impact on his decision to confess on October 30, 1979. The record indicates that this admission was made to the witness prior to appellant's illegal arrest on October 11, 1979. Chronologically, it cannot be said that this admission by itself constituted an intervening circumstance which dissipated the taint of appellant's illegal arrest. *But see Dunaway v. New York, supra* 442 U.S.

at 220, 99 S.Ct. at 2260 (Stevens, J., concurring). Yet, the record also indicates that Bradley told the police about these admissions after appellant's initial arrest. Also, Bradley had recently discussed the offense prior to appellant's arrest and lived on the same barracks floor as appellant. Once again, the lower court could infer circumstantially that Bradley also told appellant about these statements to the police. Therefore, it was the disclosure of this fact to appellant sometime during this 19-day period which was the intervening circumstance which, to some extent, dissipated the taint of the illegal arrest on his second statement.

We conclude that the Court of Military Review utilized the correct legal analysis in resolving this attenuation question and the evidence of record supports its conclusions as a matter of law. *See United States v. Ravine, supra.*[2] Accordingly, we answer the granted issue in the negative.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COOK concur.

---

2. There is also evidence in the record to support the lower court's conclusion that the illegal arrest of appellant was not flagrant police misconduct. *See Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). *Cf. Taylor v. Alabama, supra.*