**UNITED STATES**

v.

**Staff Sergeant Gregory B. HAYS, FR 451–25–2434 United States Air Force.**

**ACM S25902.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 21 Aug. 1982.

Decided 1 July 1983.

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain Kathleen G. O'Reilly.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert, Lieutenant Colonel Andrew J. Adams, Jr. and Captain Richard O. Ely, II.

Before HEMINGWAY, CANELLOS and RAICHLE, Appellate Military Judges.

DECISION

CANELLOS, Judge:

Before a special court martial with members, the accused was convicted, contrary to his pleas, of wrongful possession of Ritalin, phenobarbital and chlorolhydrate and wrongful appropriation of government property. The approved sentence extends to a bad conduct discharge, hard labor without confinement for thirty days and reduction to airman basic.

On appeal, the accused contends that initial search of his home did not qualify as a search conducted pursuant to emergency circumstances. We agree.

The accused was called at work and told that his wife had attempted suicide. He immediately went home and confirmed that she had ingested some pills, but determined, from his experience as a pharmacy technician, that she was not in any danger. After approximately one hour, the accused's first sergeant and his supervisor arrived and inquired about the situation. The accused told them that his wife was alright and, at most, it was a suicidal gesture, and not a real attempt at suicide. The first sergeant demanded to see the wife. She appeared, talked to the first sergeant, and evidenced no signs of an emergency nature.

Despite this, the first sergeant ordered the accused to take his wife to the hospital. The accused complied, and when they arrived at the emergency room, it was determined that there was no medical treatment required and she was referred to the outpatient mental health clinic. The first sergeant directed the accused's supervisor to remain at the house while he went to the hospital. Upon arriving at the hospital, the first sergeant reported to the hospital commander[1] who, without examining the victim, or consulting with the attending physician, told the first sergeant that it would be "good to know what drugs were taken." The first sergeant then contacted the security police for assistance in searching the accused's house for the drugs. Security police investigators coordinated with the staff judge advocate and the deputy base commander, and then accompanied the first sergeant to the house. During a walk-through of the house, the investigators observed what appeared to be government property on a table, and, on that basis, an authority to search was obtained and the evidence which forms the basis of the charges was discovered.

At trial, the accused moved to suppress the evidence, claiming that the search was illegal. The military judge admitted the evidence, finding that the intrusion and search at issue was "a good faith effort . . . to obtain drugs and/or other information that would assist in the rendering of medical aid. . . ." He further found that the situation fell within the purview of Mil.R. Evid. 314i.[2]

It is well settled that the Fourth Amendment[3] establishes an individual's right to privacy, protecting his person and his home from arbitrary intrusions by government agents. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Smeal,* 49 C.M.R. 751 (C.M.A.1975). Any police entry into a private dwelling, without a warrant, is per se unreasonable under the Fourth Amendment unless such intrusion falls within one of the few well-delineated exceptions to this rule. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). The burden of proving that an intrusion falls within one of these recognized exceptions, and is thus reasonable, is upon the Government. *Payton v. New York, supra; United States v. Smeal, supra.* Mil.R.Evid. 314, provides for, and authorizes, certain searches without a warrant. Mil.R.Evid. 314i, authorizes such a warrantless search "in emergency circumstances to save life or for a related purpose."

---

1. The commander was a medical doctor, specializing in psychiatry.

2. *Mil.R.Evid. 314. Searches Not Requiring Probable Cause* (i) *Emergency searches to save life or for related purposes.* In emergency circumstances to save life or for a related purpose, a search may be conducted of persons or property in a good faith effort to render immediate medical aid, to obtain information that will assist in the rendering of such aid, or to prevent immediate or ongoing personal injury.

3. U.S. Const.Amend. IV:

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

On the facts of this case, we find that the intrusion into the accused's home did not qualify as "an emergency search" under Mil.R.Evid. 314i, and that such intrusion violated the accused's rights under the Fourth Amendment. Evidence which was obtained as a result of the unlawful search cannot be introduced at trial and cannot form the basis for the issuance of an authority to search. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

There was no emergency requiring the rendition of "immediate medical aid." The accused's wife had been taken to the hospital, seen by medical personnel, determined to be out of danger medically, and referred to a psychologist for counselling. Notably absent in this case is any concern, on the part of those searching, for the medical condition of the victim. Rather, what appears of record is a command desire to know what drugs were taken for some unarticulated administrative reason rather than in aid of medical treatment.[4] This is confirmed by the actions of the search party once the items of contraband had been discovered. The searchers immediately lost interest in discovering which type of pills were ingested and concentrated on perfecting a search for evidence of a crime.

Although not necessary to our decision, we note again an utter failure to process a court-martial case expeditiously. The offense was discovered on 18 November 1981; trial was held on 21 August 1982; the convening authorities action was dated 16 December 1982 and the supervisory authority's action was on 25 February 1983. Although arguably there was no prejudice to the accused because he was not in confinement, the total of 466 days is unacceptable. The accused had been extended beyond his normal separation date of 7 December 1981, for the express purpose of trial; he demanded a speedy trial on 20 April 1982; his individual defense counsel was released from active duty in September 1982; and the case was uncomplicated and all the evidence was available the date the offense was discovered. On these facts we find it inconceivable that the processing was not done more expeditiously. We, once again, caution the practitioners of military justice to pay strict attention to the requirement to expeditiously process court-martial cases, and the sanctions for failing to do so. *See generally, United States v. Munkus,* 15 M.J. 1013 (A.F.C.M.R.1983).

Consistent with the above, the findings of guilty and the sentence are set aside. The charges are ordered dismissed.

HEMINGWAY, Senior Judge, and RAICHLE, Judge, concur.

---

4. It is noted from the allied papers that a complaint had been lodged against the accused approximately a month earlier, alleging some unspecified drug abuse.