**UNITED STATES**

v.

**Lieutenant Colonel Jay L. DAVIS, Military Judge, Appellee,**

**Staff Sergeant Dean E. Hess, FR 108–46–2002, Real Party In Interest.**

**Misc. Dkt. No. 90A–01.**

U.S. Air Force Court of Military Review.

7 March 1990.

Appellate Counsel for Appellant: Colonel Joe R. Lamport; Colonel Robert E. Giovagnoni; Major Paul H. Blackwell, Jr. and Captain David G. Nix.

Appellant Counsel for Appellee: Colonel Richard F. O'Hair and Captain Bernard E. Doyle, Jr.

Before Panel Three, FORAY, LEONARD and MURDOCK, Appellate Military Judges.

### DECISION

LEONARD, Judge:

The government has appealed the military judge's rulings that Staff Sergeant Hess' apprehension was unlawful and the evidence derived therefrom should be suppressed. We uphold the military judge's rulings.

Staff Sergeant Hess was suspected of stealing government property and improperly disposing of government property based on sworn statements given to Air Force Security Police by two noncommis-

sioned officers (NCOs) who worked with Hess. These NCOs stated that they had seen Hess take some government tools from their workplace and put them in the trunk of his car. They also stated that they had seen him take these tools off base and give them to the owner of an auto repair shop. Additionally, one of the NCOs orally told a security police investigator that Hess had numerous tools at his off base home, but the NCO was not able to positively determine whether these tools were government tools.

Armed with this information, three security police investigators set forth to investigate. Since Hess lived off base in Okaloosa County, Florida, they sought the assistance of an investigator from the Sheriff's Department. All four of them then descended upon the Hess household at about 1030 on 14 June 1989. There was some haziness about the purpose of their visit and advance planning was somewhat lacking. At least one of the security police investigators believed they were going to the Hess residence to apprehend Hess. Other investigators testified that they were going there in an attempt to obtain additional evidence by talking to Hess and trying to obtain consent to search his car and house. The investigators generally agreed that they had probable cause to apprehend Hess, but they had differing views about their probable cause to search his house. In any event, no authority to apprehend or arrest warrant had been obtained from any commander or civilian magistrate and no search authorization or search warrant had been obtained. The investigators testified that there was no exigency that would have prevented them from obtaining authorization to apprehend or search, but they had seen no need to obtain such authorization. They had hoped to obtain consent to search and didn't think they needed any special authority to apprehend at an off base residence.

The investigators went to the Hess residence and knocked on the door. The door was opened by one of the Hess children and Hess was summoned. The investigators were invited in by either the child answering the door or Hess. They entered and began explaining the purpose of their visit, but after seeing that his wife and children were present, the investigators asked Hess to step outside and all four investigators and Hess went into the front yard to talk. Hess was informed that he was suspected of theft and wrongful disposition of government tools and was read *Miranda* rights by the civilian investigator. Hess responded that he thought he needed an attorney. Immediately after invoking the right to counsel, Hess was apprehended by the senior security police investigator and was informed that they would be taking him to the Air Force base.

After his apprehension, Hess changed his mind about talking and said he would answer questions so long as he could stop the questioning at any time. The civilian investigator then questioned Hess extensively to determine if he was fully aware of his rights to counsel and wanted to affirmatively waive the presence of counsel. After satisfying themselves that Hess had waived his right to counsel, the senior military investigator questioned Hess and obtained oral admissions of the theft and wrongful disposition of government property. Hess also granted written consent to search his residence and car. Numerous items were seized during the search, but only one seized item was included in the charges against Hess.

After completing the search, the investigators took Hess to an auto repair shop to recover the government property allegedly transferred to the owner. With the consent of the owner, Hess identified the transferred items and they were taken by the investigators as evidence.

The investigators then took Hess to the security police offices on Eglin Air Force Base where he was advised of his rights under Article 31, UCMJ, 10 U.S.C. § 831, and asked to prepare a written statement providing the details of his theft and wrongful disposition of government property. He did so and was finally released to a representative of his unit at approximately 1600. He had been in continuous custody from the time of apprehension at his residence until his release to his unit.

At trial, Hess was charged with wrongful disposition of the military property transferred to the auto repair shop under Article 108, UCMJ, 10 U.S.C. § 908 and with stealing military property (the items transferred and one item seized at his residence) under Article 121, UCMJ, 10 U.S.C. § 921. The defense moved to suppress the oral and written statements Hess provided to investigators on two grounds. The first ground was that the statements were derived from an unlawful apprehension in violation of R.C.M. 302(e)(2). The second ground was that the statements were obtained in violation of Mil.R.Evid. 305 because Hess was not advised of his Article 31, UCMJ, rights and provided legal counsel when he requested such in response to the *Miranda* rights provided by the civilian investigator.

After hearing the testimony of three of the investigators and argument of counsel, the military judge made extensive findings of fact and granted the defense motion. The military judge's ruling was based on the first ground asserted by the defense. The evidence suppressed includes the oral and written statements of Hess and the property seized during the search of his residence, but not the tools recovered from the auto repair shop. Although it was not necessary to his ruling, the military judge stated that he would not have suppressed the statements based on the second ground asserted by the defense.

The United States appeals from the military judge's ruling asserting that the ruling prevents the government from using the statements to prove a fact material to the proceedings, i.e., the tools listed in the charges against Hess are government property. The evidence showed that identifying markings had been ground off the tools.

In deciding this appeal, we must first determine whether the military judge's findings of fact were correct. If none of the findings were clearly erroneous, we are bound by them. *United States v. Burris*, 21 M.J. 140 (C.M.A.1985). With one exception, we agree that the military judge's findings met this standard. In response to a trial counsel request for clarification, the military judge added a finding that the investigators did not initially go to the Hess residence to apprehend Hess. We cannot concur with this finding. One of the investigators clearly testified that they went there to apprehend Hess and it is apparent from the other investigators' testimony and the sequence of events at the Hess residence that apprehension of Hess was one of the contemplated purposes of the visit. Although the investigators disagreed about whether they had probable cause to search, they all agreed that they had probable cause to apprehend Hess. Finally, when Hess invoked his right to counsel, apprehension immediately followed without any discussion between the investigators. Therefore, we find that Hess' apprehension was one of the purposes contemplated by the investigators when they entered his residence.

The next issue before us is whether the military judge correctly applied the proper legal standard and the correctness of his ruling as a matter of law. Article 62(b), UCMJ, 10 U.S.C. § 862(b); *United States v. Lewis*, 19 M.J. 869 (A.F.C.M.R.1985). A military judge's determination of an issue of admissibility of evidence should not be disturbed on review unless it constitutes a clear abuse of discretion. *United States v. Jenkins*, 27 M.J. 209, 211 (C.M.A.1988); *United States v. Jones*, 25 M.J. 567 (A.F.C. M.R.1987).

We find the military judge properly interpreted and applied R.C.M. 302(e)(2) in arriving at his conclusion that Hess was unlawfully apprehended. Further, he was correct in his conclusion that the oral admissions, written admissions and evidence seized at the Hess residence were inadmissible because they were all obtained during the period of time Hess remained under unlawful apprehension and no intervening circumstances were present to remove the taint of the unlawful apprehension. For this second conclusion, the military judge relied upon *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *United States v. Ayala*, 26 M.J. 190 (C.M.A. 1988); *United States v. Wynn*, 13 M.J. 446 (C.M.A.1982).

R.C.M. 302(e)(2) provides that no person may enter a private dwelling for the purpose of making an apprehension of a resident of that dwelling unless such entry was made: pursuant to a properly obtained consent to search under Mil.R.Evid. 314(e) or 316(d)(2), under exigent circumstances described in Mil.R.Evid. 315(g) or 316(d)(4)(B), or pursuant to an apprehension authorization or arrest warrant issued upon determination of probable cause by the appropriate authority. When the private dwelling is located off base in the United States, the competent civilian authority in the local jurisdiction is the proper person to determine probable cause and issue an arrest warrant. R.C.M. 302(e)(2)(D).

R.C.M. 302(e) sets forth the warrant requirement in the military for an intrusion upon an individual's Fourth Amendment rights to make an apprehension in a private dwelling as applied by *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). MCM, App. 21, Rule 302, A21–14 (1984).

■ It is well settled that the Fourth Amendment establishes an individual's right to privacy in his private dwelling and protects him from unreasonable or arbitrary intrusions by government agents. *Payton*, 445 U.S. 573, 100 S.Ct. 1371; *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Smeal*, 23 U.S.C.M.A. 347, 49 C.M.R. 751 (1975); *United States v. Hays*, 16 M.J. 636 (A.F.C.M.R.1983). Any police entry into a private dwelling, no matter how slight, that is gained without a warrant is *per se* unreasonable under the Fourth Amendment unless the intrusion falls within one of a few well-delineated exceptions. *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *United States v. Reed*, 572 F.2d 412 (2nd Cir.1978); *Hays*, 16 M.J. at 637. The government has the burden of proving that an intrusion falls within one of the recognized exceptions. *Smeal*, 49 C.M.R. at 754; *Hays*, 16 M.J. at 637. The generally recognized exceptions to the warrant require-

ment are set forth in R.C.M. 302(e)(2)(A) and (B).

■ One of the recognized exceptions allows for entering a private dwelling to conduct a search or to apprehend or arrest an individual under exigent circumstances or hot pursuit. *Payton*, 445 U.S. 573, 100 S.Ct. 1371; *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *United States v. Mitchell*, 12 M.J. 265 (C.M.A.1982); R.C.M. 302(e)(2)(B). It is clear from the facts of this case that the investigators were not acting under any exigent circumstances when they went to the Hess residence or after they arrived and made their contact with Hess. Further, the government makes no such claim on appeal.

Another exception recognized by R.C.M. 302(e)(2)(A) occurs when, prior to the apprehension, government agents gain access to the private dwelling through a properly obtained consent to search. This exception also does not apply to this case because the consent to search given by Hess was after the entry into his residence and after his apprehension.

■ Although none of the specifically delineated exceptions under R.C.M. 302(e) or case law apply to this case, the government asks that we apply a new general exception to the Fourth Amendment that would allow government agents to apprehend an individual in his private dwelling, without a warrant, as long as the agents can claim they were legally in the dwelling and not trespassing. They claim that exception exists in the last sentence of R.C.M. 302(e)(2) which provides:

Nothing in this subsection ((e)(2)) affects the legality of an apprehension which is incident to otherwise lawful presence in a private dwelling.

We do not find that such a general exception exists and we decline to create one. To do so would make the warrant requirement of the Fourth Amendment meaningless. The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers and effects,

against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment protects individuals from a number of unreasonable government intrusions upon their privacy. The most strict application of its protections applies to the individual who is in the privacy of his own home. It is obvious from the wording of the amendment and interpreting case law that, except for certain strictly limited exceptions, individuals in the United States are protected from any police intrusion into their private dwelling that is not supported by a warrant based on probable cause. If police could circumvent the warrant requirement by merely going to a private dwelling to interview a resident of the dwelling and then apprehend that resident on a claim they were legally on the premises to conduct an interview there would never be any need to obtain a warrant to apprehend an individual in his private dwelling.

In this case the facts clearly show that the investigators contemplated apprehending Hess when they went to his residence. The investigators had in their possession two sworn statements from Air Force NCOs detailing the theft and wrongful disposition of government tools by Hess and they all agreed they had probable cause to apprehend. The outcome of any interview or possible consent search would have had no impact on the inevitable apprehension.

Finally, the drafters of R.C.M. 302(e) made it clear that the rule was based on the warrant requirement of the Fourth Amendment as applied by the *Payton* case. MCM, App. 21, Rule 302, A21–14. Therefore, the rule should be interpreted in a manner consistent with the Fourth Amendment, *Payton* and subsequent case law. No basis for a general exception of the type asserted by the government exists in any of these sources. In the Discussion immediately following it, the drafters also explained their intent for including the last

sentence of R.C.M. 302(e)(2) that the government relies upon. The Discussion states:

For example, if law enforcement officials enter a private dwelling pursuant to a valid search warrant or search authorization, they may apprehend persons therein if grounds for an apprehension exist.

R.C.M. 302(e)(2), Discussion.

It is our conclusion that the drafters did not intend to create any new exceptions to the warrant requirement of the Fourth Amendment as applied to arrests and apprehensions by the *Payton* case. They added the last sentence to the rule to make it clear that, if police officials had already complied with Fourth Amendment requirements to gain entry to a private dwelling, they did not have to exit and comply again to apprehend a person that they had probable cause to apprehend.

■ Under a somewhat similar theory, the Government also asserts that Hess consented to the investigators' continued presence at his residence after he became aware of their reason for being there. We disagree. It is clear from the military judge's findings that very little time elapsed during the sequence of events involving investigators' entry into the Hess residence, the leaving of the house to talk, and the apprehension of Hess. Further, opening the door to one's home and finding four investigators at the door and allowing them to enter before they state their purpose, is not a consent to police entry and apprehension without a warrant. The government may not avoid the warrant requirement of the Fourth Amendment by arriving at a suspect's residence in force, gaining his acquiescence to enter his home, and then claiming they were lawfully on the premises for the purpose of making an apprehension without a warrant. It is clear that forcible entry to affect the apprehension is not required and mere acquiescence to entry does not avoid a violation of the Fourth Amendment. *Johnson*, 457 U.S. 537, 102 S.Ct. 2579; *Payton*, 445 U.S. 573, 100 S.Ct. 1371; *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *Reed*, 572 F.2d 412. Further,

the degree and length of time of the intrusion can be very minimal. In *United States v. Ayala,* 22 M.J. 777, (A.C.M.R. 1986), the Court found that the mere opening of the door to an accused's billeting room amounted to an illegal entry for the purpose of making an apprehension. Upon further review, exigent circumstances were found to justify the intrusion, but the basic finding of a Fourth Amendment intrusion was not disturbed. *United States v. Ayala,* 26 M.J. 190 (C.M.A.1988).

■ The Government also maintains that, even if the apprehension were unlawful and the oral statements given by Hess were tainted, the written statements given hours later were free of taint and admissible. We disagree. The cases cited by the government, with one exception, deal with cases where unwarned statements or statements obtained without proper rights advisements do not necessarily taint subsequent statements obtained after proper rights advisements. However, the Fifth Amendment attenuation analysis in these cases does not apply to the Fourth Amendment attenuation issue in this case. *United States v. Wynn,* 13 M.J. 446 (C.M.A. 1982); *United States v. Escobedo,* 11 M.J. 51 (C.M.A.1981).

■ Cases analyzing Fourth Amendment attenuation issues have set forth factors to be considered in determining whether evidence or statements obtained after an illegal arrest or apprehension are tainted. Although a *Miranda* or Article 31 warning subsequent to an illegal arrest or apprehension is a factor to be considered, such warnings are rarely sufficient by themselves to break the causal connection between a Fourth Amendment illegality and challenged evidence. *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Other important factors are: the temporal proximity of the arrest and the incriminating evidence, the presence or lack of intervening circumstances, and the purpose and flagrancy of the official misconduct. 442 U.S. at 218, 99 S.Ct. at 2259; 422 U.S. at

602, 95 S.Ct. at 2261; *United States v. Ayala,* 22 M.J. 777 (A.C.M.R.1986).

The military judge found that Hess was in continuous custody from the point the investigators placed him under apprehension until they released him to his unit after completion of the written statements. The total period of the custody was approximately five hours. Additionally, the military judge found no intervening circumstances which operated to clear and remove the taint of the illegal apprehension. These facts are very similar to the *Brown* and *Dunaway* cases where the Supreme Court found initial statements made within several hours of an illegal arrest tainted. The Court further found that successive statements made one day later, while the accused were still in custody, without any intervening circumstances, to be also inadmissible. 442 U.S. at 203, 99 S.Ct. at 2251; 422 U.S. at 595, 95 S.Ct. at 2257. Further, in both the *Brown* and *Dunaway* cases, the fact that the accused were given proper *Miranda* warnings before each statement was taken did not remove the taint of the illegal arrests. 442 U.S. at 216, 99 S.Ct. 2258; 422 U.S. at 595, 95 S.Ct. at 2257.

The final factor we consider is the purpose and flagrancy of the official misconduct. Although the violation of the Fourth Amendment in the *Brown* and *Dunaway* cases was making an arrest without probable cause, the purpose and flagrancy of the misconduct condemned in those cases was virtually identical to what occurred in this case. In both cases, the police engaged in an "expedition for evidence" undertaken "in the hope that something might turn up". 442 U.S. at 218, 99 S.Ct. at 2259; 422 U.S. at 605, 95 S.Ct. at 2262. The investigators went to the Hess residence on just such an "expedition for evidence". They knew they had probable cause to apprehend Hess, but they decided to ignore proper procedures for making an apprehension at a private dwelling in the hopes they might gain some more evidence before making the apprehension.

The government argues that it is somehow less flagrant misconduct to apprehend a person in his private dwelling without

proper authority than to apprehend a person on the street without probable cause. We don't see any such difference. Both abuses are specifically covered by the Fourth Amendment and are protected equally by the Manual for Courts–Martial. R.C.M. 302(c) and (e). Further, the Supreme Court has stated on numerous occasions that the idea that any governmental intrusion into an individual's home must be strictly circumscribed is a fundamental concept at the core of the Fourth Amendment. *Payton*, 445 U.S. at 586, 100 S.Ct. at 1380; *Camara v. Municipal Ct.*, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967). The Supreme Court has also stated the framers of the amendment interposed the warrant requirement between the public and the police, reflecting their conviction that the decision to enter a dwelling should not rest with the officer in the field, but rather with a detached and disinterested magistrate. *McDonald v. United States*, 335 U.S. 451, 455, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948); *Johnson v. United States*, 333 U.S. 10, 13, 68 S.Ct. 367, 368, 92 L.Ed. 436 (1948).

Applying the law, we come to the same conclusion as the military judge. The apprehension of Hess, after entry into his private dwelling, was in violation of R.C.M. 302(e)(2) and the Fourth Amendment of the United States. Further, the oral and written statements taken from Hess during this illegal apprehension were tainted by the Fourth Amendment violation and are inadmissible against him. Therefore, the appeal is denied and the record of trial is returned to the convening authority.*

Senior Judge FORAY and Judge MURDOCK concur.

---

*On 28 February 1990, Appellee moved for oral argument on this case. Based on our disposition, such oral argument is unnecessary and the motion is denied.