Wachtler, J.
This appeal involves the validity of a search of a house where the defendant, believed to be armed, was hiding on the premises to avoid arrest pursuant to a valid warrant.
On March 21, 1973 the police went to the house of the defendant’s mother to execute an arrest warrant for assault which had been issued approximately one year earlier. The officers were acting on information from a confidential informant who had called a few days before to inquire whether the police were still looking for Marcel Etcheverry. On the day in question the informant called again and told the police that the defendant was presently at his mother’s house and was armed with a sawed-off shotgun. Since the defendant’s whereabouts had been unknown and a further check revealed that he was also in violation of parole, the police proceeded there immediately. Several officers were positioned outside the premises while Detective Rizzo, who testified at the suppression hearing, and some others approached the house. When confronted by Mrs. Etcheverry they identified themselves and informed her that they were there to arrest her son. At first she denied that he was home, but on further questioning she admitted that he was working in the upstairs bathroom. The record indicates that when the officers arrived at the bathroom it was unoccupied; although it was apparent from the brush and paint can that someone had just been painting the room.
Realizing that Etcheverry was somewhere in the house the police commenced their search for him. Mrs. Etcheverry pointed out defendant’s bedroom and Detective Rizzo entered looking for the defendant and the shotgun. After checking under the bed Rizzo peered into a walk-in closet where he discovered a chest of drawers and a trapdoor leading to the attic. He searched the dresser and found a shotgun and seven *255 shells in the third drawer. At the time the shotgun was seized the police had been in the house for approximately 20 minutes but had failed to find the defendant. Since he had not exited from the house, they concluded that he was in the attic and called to him to come down and surrender. The defendant failed to respond.
In preparation for an ascent into the attic, one of the officers removed the clothing from the closet pole in order to have clear access to the trapdoor above. While transferring a sports jacket he felt an object inside the pocket which had the shape and feel of a knife and which, on removal, was in fact a switchblade. After approximately 30 minutes the defendant’s uncle agreed to precede Detective Rizzo into the attic. Etcheverry was found by Rizzo lying under a mattress between the floorboards. After being manacled and searched he was brought down from the attic and to the police station. Shortly thereafter he was indicted for felony possession of the sawed-off shotgun and the switchblade.
At the suppression hearing to consider the validity of the seizure of the weapons, the court held that the search was incident to a valid arrest and hence lawful. The Appellate Division affirmed, without opinion. We affirm but for a different reason.
Had the police in this case not been informed that the defendant was armed and was in the house, the search of the dresser drawer and the closet would not have been justified (Chimel v California, 395 US 752, 763). In this instance, however, with knowledge that the defendant was somewhere in the house and informed that he might be armed, the police officers were admitted to the house by its owner, the defendant’s mother. Their search for the defendant revealed that he had apparently hastily abandoned painting the bathroom and was hiding in the attic, access to which could be had only through a small trapdoor in the ceiling of the closet off the defendant’s bedroom. It is significant that at the time of the instant search the police believed, on the basis of confidential information that the defendant was at his mother’s house and was armed with a sawed-off shotgun. This information had been partially verified when Mrs. Etcheverry indicated that the defendant was upstairs and the police were justified in crediting the information that he was armed (see People v Hanlon, 36 NY2d 549, 557).
At this point the police made a search of the bedroom and *256 its closet to find the sawed-off shotgun the defendant was supposed to have in his possession. The search uncovered the shotgun in a dresser in the closet. Only then did the police head for the attic, and it was in clearing the way through the closet to the attic trapdoor that the knife came to light. As it was, for obvious reasons of their own safety, they asked the defendant’s uncle to precede them through the trapdoor into the attic. Following, they found and arrested the defendant, and after handcuffing him retraced their steps through the trapdoor and the small closet. The factor rendering this search lawful was that Etcheverry had hurriedly left the room he was in and actively sought to elude the police. Consequently they were obligated to use all reasonable efforts to apprehend the defendant and to insure their own safety, as well as that of others present.
In Warden v Hayden (387 US 294), the United States Supreme Court upheld a search of the defendant’s house on the grounds that it was conducted while the police were in "hot pursuit”. There the police were informed that an armed robbery had just occurred and that the suspect had entered a certain house. Hayden’s wife allowed the police to enter and they searched the first and second floors and the cellar simultaneously. Hayden was found feigning sleep in an upstairs bedroom and was arrested. At trial he 4 sought to suppress the weapons found in the bathroom, the clothes found in the washing machine in the cellar and other items. The court held that speed was essential and the police acted reasonably to prevent the resistance or escape of the suspect. Similarly, in the case at bar, an armed fugitive was at large within the confines of a house, necessitating a prompt thorough search by the police.
We recognize that the situation here was not a "hot pursuit” involving a smoking gun, but attach no significance to that fact. The only factor of importance is that an armed fugitive was consciously evading arrest. Therefore the police were justified in searching for the defendant and for weapons which could endanger life or thwart the accomplishment of their mission (Warden v Hayden, 387 US, at p 299, supra).
Accordingly, the order of the Appellate Division should be affirmed.