**UNITED STATES**

v.

**Private First Class Leon JAMISON, 251–96–6671, U. S. Army, Headquarters and Headquarters Company, 1st Battalion, 48th Infantry, 3rd Armored Division, APO New York 09091.**

**UNITED STATES**

v.

**Specialist Four Alonzo E. TRIMIEW, 226–70–2939, U. S. Army, Headquarters and Headquarters Company, 1st Battalion, 48th Infantry, 2d Brigade, 3d Armored Division, APO New York 09091.**

SPCM 11291.

U. S. Army Court of Military Review.

Sentence Adjudged 3 March 1975.

Decided 21 June 1976.

Appellate Counsel for Accused *JAMISON* : CPT John M. Nolan, JAGC; CPT James E. Heath, JAGC; CPT Michael R. Caryl, JAGC; LTC James Kucera, JAGC. *TRIMIEW* : CPT Steven J. McAuliffe, JAGC; CPT Sammy S. Knight, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: *JAMISON*—CPT Dale L. Anderson, JAGC; CPT Joel M. Martel, JAGC; CPT Richard S. Kleager, JAGC; LTC Donald W. Hansen, JAGC. *TRIMIEW*—CPT Dale L. Anderson, JAGC; CPT Richard S. Kleager,

JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

JONES, Senior Judge:

Despite their pleas of not guilty, the appellants were convicted by special court-martial of possession of heroin in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The sentences imposed and approved have resulted in review by this Court pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

The appellants contend, as they did below, that the evidence introduced to prove their guilt of possession of the contraband drug was inadmissible because it was obtained during an illegal search. The operative facts are relatively simple and undisputed. Military Police Investigator Rustad testified at trial that on the night of 31 December 1974 he received a call from a confidential informant advising him that heroin was being cut and packaged at a specific apartment in the noncommissioned officer housing area in Gelnhausen, Germany. Rustad then proceeded to the housing area to meet with the informant at a prearranged location. The agent testified that the informant was in "an emotional state." Furthermore, since the informant was unsure of the apartment number, the investigator sent him back into the building to verify it. After returning to the military police station to pick up his partner, Sergeant Selleck, Rustad went immediately to the home of Colonel Keeley to obtain authority to search the apartment. Colonel Keeley was the brigade commander and sub-community leader empowered to authorize searches in the area.

Rustad informed Colonel Keeley that his confidential informant had been in the apartment where he had observed individuals processing heroin. In response to questions, Rustad revealed to Colonel Keeley that the apartment was rented by a Specialist Ellis, that a large amount of heroin was present and that the packaging was almost complete, indicating to Rustad a possibility that those involved might soon be dispers-

ing. Upon further cross examination, Rustad stated that he could not recall any additional queries having been put to him by the colonel. When asked specifically if he had relayed any information to the colonel concerning the background of the informant or his identity or reliability, Rustad stated that he had not. However, he did assure Colonel Keeley that the informant had seen the contraband and that there was no doubt in his [Rustad's] mind that it was there. To the best of Investigator Rustad's memory, the colonel had never refused a request to search made by him. To use Rustad's own words:

"Usually when I state confidential informant, I take for granted that Colonel Keeley takes for granted that it's already set up."

The stipulated testimony of Colonel Keeley confirms that this conversation did in fact take place and that the colonel did orally authorize the instant entry. However, he could not recall the substance of the discussion leading up to his granting the authorization and he specifically was unable to remember whether he inquired as to the reliability of the confidential informant.

Equipped with the authorization to enter the apartment and search, the agents returned to the housing area. After first apprehending two persons seen leaving the building, they approached the apartment in question. The investigators' knock on the door triggered resistance from within, necessitating use of force by Rustad to gain admittance. Rustad entered first with Selleck following. Rustad immediately placed the individuals in the apartment, including the appellants, "under apprehension for possession of suspected narcotics." At the same time Selleck entered the living room and seized 203 packets lying on a dining room table. While the table could not be seen from the threshold of the apartment, it could be seen almost immediately after entry. Subsequent analysis established that the packets contained heroin. Since the instant convictions rest solely upon this heroin seized during the apprehension and

search, the decision in this case is inextricably tied to legality of the entry, apprehension, and search.

## I

■ At trial the defense counsel argued that the authorization to search granted by Colonel Keeley was fatally defective in that Colonel Keeley, while acting as a neutral and detached magistrate,[1] was supplied with no information concerning the reliability of Rustad's confidential informant. *See Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). In overruling the defense objection to the evidence, the military judge did not specifically address the validity of the authorization to search. Instead, he held that the search was valid as incident to a lawful arrest.

Counsel for the appellants assert that implicit in this holding is a finding by the trial judge that the authorization to search the agents were purporting to execute was fatally deficient as no information was relayed to the colonel concerning the circumstances leading Rustad to believe that the informant was credible.[2]

We need not speculate on what the military judge's ruling implies because it is clear to us that no adequate information concerning the reliability of the informant was relayed by Rustad prior to the colonel's granting the authorization to search the apartment. Therefore, since Colonel Keeley deferred to the judgment of the law enforcement agent seeking permission to search on one of the crucial *Aguilar* factors, his magisterial determination was fatally deficient and cannot be salvaged by a *nunc pro tunc* finding of probable cause. *United States v. Houston*, 23 U.S.C.M.A. 200, 48 C.M.R. 952 (1974); *United States v. Llano*, 23 U.S.C.M.A. 129, 48 C.M.R. 690 (1974). Thus, if the search is to be justified at all, it must be as one incident to apprehension. *United States v. Stackhouse*, 23 U.S.C.M.A. 118, 48 C.M.R. 679 (1974).

1. *See United States v. Hartsook*, 15 U.S.C.M.A. 291, 35 C.M.R. 263 (1965).

2. While the Government does not concede the invalidity of the colonel's authorization, it con-

## II

Article 7, UCMJ, and paragraph 19, Manual for Courts-Martial, United States, 1969 (Revised edition), bestow upon military police such as Investigator Rustad, the authority to apprehend upon "reasonable belief that an offense has been committed and that the person apprehended committed it." Thus, while he may not have relayed enough information to Colonel Keeley for that officer to have probable cause to authorize a search, Agent Rustad himself, having used this informant in the past, may have had the reasonable belief necessary to apprehend the appellants. If so, the question then becomes whether there are any limitations on where the apprehension may be made. Specifically, does the authority to apprehend under Article 7, UCMJ, and paragraph 19 of the *Manual*, include the authority to enter a private dwelling to effect such apprehension?

Counsel for the appellants acknowledge the general validity of searches incident to proper apprehension. However, they argue that when the apprehension is effected in the privacy of a home, important constitutional considerations arise. In such cases, they contend, the constitutional focus should be upon the entry into the dwelling and not upon the apprehension itself. Therefore, according to the appellants, the Fourth Amendment requirement of a valid warrant, or in the military, authorization by a proper official, should have been an essential prerequisite here to the entry by the military police into the apartment.

Although the Supreme Court of the United States has not spoken on this precise issue, the Court has alluded to it in deciding closely related questions.

In *Jones v. United States*, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958), Justice Harlan, speaking for the Court, noted that

fines its argument on appeal to the assertion that the search may be justified as one incident to apprehension.

the forced nighttime entry into a dwelling to arrest even on probable cause when there is no reason a warrant could not be obtained presents a "grave constitutional question." 357 U.S. at 499–500, 78 S.Ct. 1253.

In *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Supreme Court, although finding it unnecessary to decide the precise issue, stated:

"It is clear, then, that the notion that the warrantless entry of a man's house in order to arrest him on probable cause is *per se* legitimate is in fundamental conflict with the basic principle of Fourth Amendment law that searches and seizures inside a man's house without warrant are *per se* unreasonable in the absence of some one of a number of well defined 'exigent circumstances.' . . ." 403 U.S. at 477–478, 91 S.Ct. at 2044. "If we were to agree . . . that the police may, whenever they have probable cause, make a warrantless entry for the purpose of making an arrest, . . . then by the same logic *any* search or seizure could be carried out without a warrant, and we would simply have read the Fourth Amendment out of the Constitution. . . ." 403 U.S. at 480, 91 S.Ct. at 2045.

Recently, in *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), the Court held that law enforcement officers possessing statutory powers to arrest (analogous to authority under Article 7, UCMJ, and paragraph 19, MCM), may effect a warrantless apprehension in a *public place* on probable cause without a showing of special circumstances excusing the procurement of a warrant. However, the Court expressly declined to consider or decide whether or under what circumstances an officer must obtain a warrant or authorization before he may lawfully enter a private dwelling to make an arrest.

Several courts have passed on this issue. In *Dorman v. United States,* 140 U.S.App. D.C. 313, 435 F.2d 385 (1970), the Court of Appeals for the District of Columbia was faced with a factual situation somewhat analogous to the one at hand. The police found evidence at the scene of a robbery linking the defendant to the crime. They had authority to arrest the defendant without a warrant upon probable cause. They entered the defendant's home without a warrant and while searching for the defendant found further evidence linking defendant to the crime. It was this latter evidence that the defense sought to suppress at the trial. Although holding the search to be legal because of certain exceptional circumstances, the Court held in part:

". . . the constitutional safeguard that, with room for exceptions, assures citizens the privacy and security of their homes unless a judicial officer determines that it must be overriden, is applicable, not only in case of entry to search for property, but also in case of entry in order to arrest a suspect." 435 F.2d at 390.

More recently, in *Commonwealth v. Forde,* Mass., 329 N.E.2d 717 (1975), the Supreme Judicial Court of Massachusetts reversed its long held position of approving warrantless entries into homes to arrest[3] and, citing the language quoted above from *Coolidge v. New Hampshire,* held that the Fourth Amendment prohibits the warrantless entry into a dwelling to arrest, absent exigent circumstances.

The most recent case in this area is *People v. Ramey,* 16 Cal.3d 263, 127 Cal.Rptr. 629, 545 P.2d 1333 (1976). The California Supreme Court, after discussing *Coolidge, Forde,* and *Dorman,* among others, also held that absent exigent circumstances a warrant must be obtained to enter a home to make an arrest.

■ We are of the opinion that the rule expounded in *Dorman, Forde* and *Ramey* is sound. It strikes a fair balance between the competing interests of police necessity and the sanctity of the dwelling—that is, it provides workable guidelines for determining whether or not the arrest and/or search is "reasonable" under the Fourth Amendment. Accordingly, we hold that absent

---

3. *See Commonwealth v. Phelps,* 209 Mass. 396, 95 N.E. 868 (1911).

exigent circumstances, appropriate authorization by a responsible commander based upon probable cause must be obtained before a private dwelling may be entered to make an arrest even though the person entering possesses authority to arrest and has probable cause to do so.[4]

We believe the flexibility necessary to provide for the unique aspects of military life can be afforded within the framework of the recognized exception to this rule of exigent or exceptional circumstances.[5]

We find no such circumstances present here. This was clearly not the apprehension of a fleeing criminal. Rather, it was a somewhat organized "bust" of a drug distribution operation which presented no immediate danger to other persons.[6] Thus both the purported criminal action and the suspects were contained within the limited confines of the apartment which the informant was monitoring. While the testimony of both agents indicates that they acted with some dispatch upon receiving the tip, there is no affirmative evidence of record indicating that the drugs would be immediately moved or destroyed or that the suspects would flee the jurisdiction. See Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970).

The agents' actions confirm that time permitted the obtaining of authorization. Moreover, the tool of surveillance pending issuance of proper authorization is always available as a less constitutionally offensive alternative to a warrantless entry. See United States v. Jeffers, 342 U.S. 48, 52, 72 S.Ct. 93, 96 L.Ed. 59 (1951); United States v. Kinane, 24 U.S.C.M.A. 120, 123, 51 C.M.R. 310, 313, 1 M.J. 309 (1976).

4. We do not decide, however, the extent to which this rule might apply to barracks entries or searches.

5. Some of the instances in which the courts have expressed approval of warrantless entries and searches based upon exigent or exceptional circumstances are hot pursuit of a felon, Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); People v. Etcheverry, 39 N.Y.2d 252, 383 N.Y.S.2d 292, 347 N.E.2d 654 (N.Y.Ct.App.1976), and the prevention of removal or destruction of criminal goods, United

As none of the factors normally associated with exigent or special circumstances were present and since proper authorization to enter the apartment could have been obtained, we will not apply the exception to the general rule here. Thus, the fruits of the search incident to the apprehension were not admissible in the trial by court-martial, notwithstanding the existence of probable cause to search and to arrest.

The findings and sentences are set aside and the charges are dismissed.

Judges O'DONNELL and FELDER concur.

States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); United States v. Lange, 15 U.S.C.M.A. 486, 35 C.M.R. 458 (1965).

6. Compare Commonwealth v. Andrews, 358 Mass. 721, 267 N.E.2d 233 (1971), where police entrance of an apartment without a warrant to arrest the defendant who was brandishing a gun and threatening to kill all the other residents of the building was upheld by the Massachusetts Court.