UNITED STATES, Appellee,

v.

Jesus S. AYALA, Sergeant First Class, U.S. Army.

No. 55,694.

CM 446711.

U.S. Court of Military Appeals.

June 20, 1988.

For Appellant: *Captain Scott A. Hancock* (argued); *Colonel Brooks B. La Grua, Major Eric T. Franzen, Captain Annamary Sullivan* (on brief); *Colonel John T. Edwards* and *Lieutenant Colonel Paul J. Luedtke.*

For Appellee: *Captain Karen L. Taylor* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Captain Denise K. Vowell* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by a general court-martial composed of officer and enlisted members at Fort Carson, Colorado, during September and October of 1984. Contrary to his pleas, he was convicted of the premeditated murder of his wife, in violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918. He was sentenced to a dishonorable discharge, confinement for life, forfeitures of $300.00 pay per month for life, and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged. The Court of Military Review affirmed the findings and sentence. 22 M.J. 777 (1986).

This Court granted review of the following issues:

I

WHETHER THE MILITARY JUDGE ERRED IN REFUSING TO SUPPRESS THE EVIDENCE OBTAINED FROM

THE SEARCH OF APPELLANT'S ON–POST FAMILY QUARTERS.

## II

WHETHER THE ARMY COURT ERRED IN FINDING THAT, ALTHOUGH THERE WAS A FOURTH AMENDMENT VIOLATION COMMITTED BY THE INVESTIGATOR'S OPENING OF THE DOOR TO APPELLANT'S ROOM AT THE IVY INN RESULTING IN AN ILLEGAL APPREHENSION, EVIDENCE OBTAINED AS A RESULT WAS SUFFICIENTLY ATTENUATED TO BE ADMISSIBLE AT TRIAL.

We resolve both these questions against appellant and affirm.

The facts in this case are fully developed in the decision of the Court of Military Review. It is sufficient to note that evidence of blood stains was discovered by Criminal Investigation Command agents at various places in appellant's assigned family quarters. Appellant asserts that law enforcement personnel searched his quarters without probable cause and that seizure of this evidence violated his Fourth Amendment rights. In addition, evidence of blood stains was later found in the trunk of his car and on his household goods located in a civilian storage facility. Appellant asserts that any consent he gave to police to conduct searches of these places[1] was invalid because it was a product of his unlawful arrest. See Payton v. New York, 445 U.S. 573, 576–77, 100 S.Ct. 1371, 1374–75, 63 L.Ed.2d 639 (1980). Finally, appellant challenges admission into evidence of statements[2] made by him after his arrest at the Ivy Inn. He again asserts that his earlier arrest was illegal and argues that his statements as fruits of his illegal arrest must be suppressed. See generally Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

## I

Appellant initially contends that the criminal investigators had no probable cause to search his on-post family quarters and that the blood-stain evidence discovered therein was inadmissible. We agree with the Court of Military Review that under the circumstances of this case appellant had no reasonable expectation of privacy in his former residence. 22 M.J. at 783–85. Cf. United States v. Clow, 26 M.J. 176 (C.M.A.1988). Accordingly, his Fourth Amendment rights were not violated even if this military housing unit was searched and the challenged evidence was seized without probable cause. United States v. Miller, 13 M.J. 75 (C.M.A.1982); United States v. Sanford, 12 M.J. 170 (C.M.A.1981).

In Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), the Supreme Court noted that a person asserting a right to privacy under the Fourth Amendment had to meet a two-prong test. First, the person must have "exhibited an actual (subjective) expectation of privacy." The second prong requires a showing that "the individual's subjective expectation of privacy is 'one that society is prepared to recognize as 'reasonable.'" Id. at 740, 99 S.Ct. at 2580, quoting Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967).

Turning to the record before us, we find there was little, if any, evidence that appellant actually exhibited any expectation of privacy in the quarters he was clearing. In any event, assuming such an expectation did exist on his part, it was certainly unrea-

---

1. Appellant consented to the search of his car, his household quarters, his person, his household goods, and his room at the Ivy Inn.

2. Appellant stated to police that his wife had gone to Korea but then said he didn't know where she went. He also stated that his wife left him around 2200 or 2230 on June 6. He then stated that he was too embarrassed to call his neighbors but he had unsuccessfully twice tried to contact relatives in Korea. He denied owning a wicker-type trunk; he gave a physical description of his wife; and he asserted that her passport and suitcase were apparently gone. Finally, he stated that there was no reason for a large amount of blood to be in his quarters and that no one had been seriously injured there.

sonable under the circumstances of this case. *See generally California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986).

In this regard we note that prior to the challenged search, appellant had removed the vast majority of his belongings from these quarters and transferred his residence to the Ivy Inn. *See United States v. Ayala, supra* at 782 n.8. While he still retained some residual responsibility for the condition of these quarters (*id.* at 783 n.10), it was clear that they no longer served a function for him as a residence. *See United States v. Olmstead*, 17 M.J. 247, 250 (C.M.A.1984). Moreover, he surrendered his keys to these quarters as part of the clearing process to a third-party cleaning service. *Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960). *Cf. Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). He surely assumed some risk that the cleaners might discover evidence of his crimes and expose it to the public at large. *See United States v. Miller, supra* at 78; *United States v. Sanford, supra* at 175. Finally, he took no affirmative precautions to protect any remnants he left in these quarters during the clearing process. *See United States v. Battles*, 25 M.J. 58 (C.M.A.1987); *United States v. Ellis*, 24 M.J. 370, 372 (C.M.A. 1987). An expectation of privacy in this context was patently unreasonable. *See generally California v. Greenwood*, —— U.S. ——, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988).

## II

The underlying premise of appellant's second evidentiary challenge is that his arrest at the Ivy Inn was unlawful because it was not based on probable cause. In the event that probable cause is found to exist, he further asserts that his arrest was unlawful because the criminal investigators were not given command authorization to enter his military hotel room to accomplish it. The Court of Military Review found that there was probable cause to arrest appellant but the police acted unlawfully in opening the door of his hotel room without command authorization. *See Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371; *cf. United States v. Mitchell*, 12 M.J. 265, 269 n.1 (C.M.A.1982) (Lead opinion of Everett, C.J.).[3] Nevertheless, it found that any connection between his illegal arrest and the subsequently obtained admissions of appellant and his consent to search was sufficiently attenuated to permit use of this evidence at trial. 22 M.J. at 786–93.

■ We agree for the reasons persuasively presented in the Court of Military Review's opinion that appellant's post-arrest statements and consent were not tainted by any illegality which might have occurred earlier during his arrest at the Ivy Inn. *See generally United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978). Moreover, we agree that probable cause did exist for his arrest at that time. However, we are not convinced that his arrest was unlawful under *Payton v. New York, supra.*

The particular holding in *Payton* was that the warrantless entry into a suspect's apartment for a routine felony arrest solely on the basis of a state law authorizing such entry was unconstitutional. The Supreme Court did not decide whether exigent circumstances existed in Payton's case which might otherwise have constitutionally justified a warrantless entry of his apartment. 445 U.S. at 574, 576, 100 S.Ct. at 1373, 1374. In a subsequent case, *Welsh v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), the Court held that "the gravity of the... offense" was an important factor to be considered among others in assessing the need for immediate action

---

**3.** R.C.M. 302(e)(2)(C)(i) was promulgated in April 1984 and became effective shortly after this arrest at the Ivy Inn. The decision of this Court in *United States v. Mitchell*, 12 M.J. 265 (C.M.A.1982), was not a majority decision. *United States v. Davis*, 8 M.J. 79 (C.M.A.1979), and *United States v. Jamison*, 2 M.J. 906 (A.C.M. R.1976), were pre-*Payton* cases. Some confusion as to applicability of *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), within the military community was understandable.

without a warrant. *Id.* at 753, 104 S.Ct. at 2099.

Appellant, like Payton, was suspected of the crime of murder. His suspected method of killing was the beating of his victim to death with some type of blunt instrument. Clearly, this was a serious crime and one whose perpetration was particularly violent and, of course, threatening to life. *See United States v. Crespo,* 834 F.2d 267, 270–71 (2d Cir.1987) *cert. denied,* — U.S. ——, 108 S.Ct. 1471, 99 L.Ed.2d 700 (1988). *Cf. Welsh v. Wisconsin, supra.* Moreover, the presence of such a dangerous person in a hotel room posed a significant risk to other guests at the Ivy Inn. *See United States v. Santiago,* 828 F.2d 866, 869 (1st Cir.1987); *United States v. Standridge,* 810 F.2d 1034, 1037 (11th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 2468, 95 L.Ed.2d 877 (1987). Furthermore, the partially eradicated condition of the blood stains in his former residence suggests that appellant was actively engaged in the destruction or concealment of evidence of his crime. *See United States v. Crespo, supra.* Finally, his actions in putting in for retirement and clearing his base quarters were strong indications of an intention on his part to flee. *See United States v. Santiago, supra.* Although not raised at trial or argued on appeal, we hold the particular exigent circumstances demonstrated by this record justified appellant's immediate arrest without authorization of his commander. *See United States v. Wood,* 25 M.J. 46, 48 (C.M.A.1987).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COX concur.