**UNITED STATES, Appellee,**

v.

**Private E2 Barry D. McCARTHY, 264–53–3612, United States Army, Appellant.**

**ACMR 9001933.**

U.S. Army Court of Military Review.

20 Feb. 1992.

For Appellant: Major Michael J. Kelleher, JAGC, Captain Gregory A. Gross, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major Thomas E. Booth, JAGC, Major James L. Edwards, JAGC USAR (on brief).

Before CREAN, ISKRA and HAGAN, Appellate Military Judges.

## OPINION OF THE COURT

ISKRA, Judge:

A military judge sitting as a general court-martial convicted the appellant, contrary to his pleas, of three specifications of burglary, three specifications of assault consummated by a battery, and one specification of violating a lawful general regulation, in violation of Articles 129, 128, and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 929, 928, and 892 (1982). The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for eight years, forfeiture of all pay and allowances, and reduction to Private E1.

Appellant, through counsel, contends that his warrantless apprehension in his barracks room was in violation of the fourth amendment. U.S. Const. amend.

IV. The appellant also personally asserts twelve errors, three which can be categorized as ineffective assistance of counsel and one as sentence inappropriateness. *See United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982). In addition to the issue raised by appellate defense counsel, we will discuss the issues of ineffective assistance of counsel and sentence appropriateness.

In the early morning hours of 16 February 1990, the security police at Little Rock Air Base, Little Rock, Arkansas, received reports concerning assaults on three females who resided in military dormitories. The complainants were interviewed and gave the following description of the assailant: he was dark complected, approximately six-feet tall; a tattoo on the top right forearm; he wore blue jeans, tennis shoes, a black T-shirt with a large design, and a ski mask; and identified himself as Barry. This information was provided to Master Sergeant (MSG) Meadows, a security policeman. Armed with this information, MSG Meadows decided to walk through the dormitories in an attempt to locate the assailant. As he entered the dormitory, he noticed a message on the door of one of the rooms signed by a Barry McCarthy. The occupant of the room was questioned and described Barry McCarthy as being six-feet tall, with dark hair and a dark complexion. He also informed MSG Meadows that Barry McCarthy was in the Army and resided in room 305, dormitory 714.[1] Master Sergeant Meadows then went to that dormitory and knocked on the door. After receiving no response, he contacted the charge-of-quarters (CQ), who described Barry McCarthy as being six-feet tall, with dark hair, dark complexion, and with a tattoo. At that time, MSG Meadows believed he had probable cause to enter the room. After pounding on the door and receiving no answer, he had the CQ open the door with a key. After entering the room, he observed two people sleeping on bunk beds. The person on the bottom bunk (with dark hair, dark complexion, a tattoo, wearing blue jeans, tennis shoes, and a black T-shirt

1. The appellant was assigned to Company A, 1st Battalion, 509th Infantry (Airborne), Joint Readiness Training Center, at Little Rock Air Force Base.

with a large design) fit the description of the suspect, Barry McCarthy, the appellant. Master Sergeant Meadows waited for back-up and a few seconds later Investigator Allen and another sergeant entered the room.

Investigator Allen had previously received information at the police station that the victims and witnesses described the assailant as a tall male, with olive-colored skin, dark hair, a tattoo, and wearing a black shirt with a pattern. Investigator Allen testified that the physical description and clothing matched those of the individual sleeping on the bottom bunk.

Investigator Allen attempted to awaken the appellant by shaking him and speaking to him. When the appellant rolled over, Investigator Allen observed a ski mask tucked into the appellant's waistband. Investigator Allen seized the mask and placed the appellant under apprehension. He then conducted a pat-down search for weapons discovering a ground burst simulator in the appellant's pocket.

The Air Base Dormitory Standards and Policy was attached in the record as part of Appellate Exhibit VII.[2] The Standards and Policy specifically provides that: room assignments are made in accordance with Air Force Regulations; certain weapons are prohibited from dormitory rooms; cooking is limited to designated areas; a name plate is required to be posted on or near the door; shoes are required to be polished and lined in an orderly manner under the bed; room inspections are authorized; visitation privileges prohibit overnight guests and visits by individuals under 18 not accompanied by a parent or guardian. Additionally, the evidence indicates that the CQ had a key and was authorized to enter the room.

We first turn to the appellant's assertion that his warrantless apprehension in his barracks room was in violation of the fourth amendment. In *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Supreme Court of the United States ruled that, absent exi-

gent circumstances, the fourth amendment prohibits police from making a warrantless and nonconsensual entry into a suspect's home to make a routine arrest. Justice Stevens, opined that—

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their ... houses ... shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 [81 S.Ct. 679, 683, 5 L.Ed.2d 734 (1961)]. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

*Payton*, 445 U.S. at 589–90, 100 S.Ct. at 1381–82.

With respect to *searches* in barracks, the Court of Military Appeals has found that a search for evidence of a crime requires probable cause and authorization, absent exigent circumstances. *United States v. Roberts*, 2 M.J. 31, 36 (C.M.A.1976). However, in reaching its conclusion about searches, the Court of Military Appeals quoted language from the United States Court of Appeals for the District of Columbia, that "the soldier cannot reasonably expect the Army barracks to be a sanctuary like his civilian home," and that "military quarters have some aspects of a dwelling or a home and in those respects the military member may reasonably expect privacy protected by the Fourth Amendment." *Roberts*, 2 M.J. at 36 (quoting

---

**2.** Little Rock Air Force Base Reg. 90–2, Housing Dormitory Standards and Policies, paras. 4, 7, and 9 (28 June 1988).

*Committee for GI Rights v. Callaway,* 518 F.2d 466, 467 (D.C.Cir.1975)).[3]

With respect to *apprehensions* in barracks, Manual for Courts–Martial, United States, 1984, Rules for Courts–Martial 302(d)(2) and (e)(2) [hereinafter MCM, 1984 and R.C.M.], exclude military barracks rooms from the *Payton* warrant requirement[4] because soldiers may not reasonably expect their privacy to be protected to the same extent while living in a barracks room as it would be protected while living in a private dwelling. MCM, 1984 and R.C.M. 302 analysis, app. 21, at A21–14. The appellant asserts that these rules violate the fourth amendment.

The case law with respect to *apprehensions* in barracks rooms is not as well settled as the Rules for Courts–Martial indicate. Before *Payton,* this Court held that "absent exigent circumstances, appropriate authorization by a responsible commander based upon probable cause must be obtained before a *private dwelling* may be entered to make an arrest even though the person entering possesses authority to arrest and has probable cause to do so." *United States v. Jamison,* 2 M.J. 906, 909–910 (A.C.M.R.1976) (emphasis added). However, this Court in *Jamison* specifically stated it was not deciding whether this rule applied to military barracks. *Id.* at 910 n. 3. Then, in *United States v. Davis,* 8 M.J. 79 (C.M.A.1979) (summary disposition), the Court of Military Appeals held that a warrantless apprehension in the barracks was illegal, absent exigent circumstances, based on the *Jamison* decision. By an equally divided vote of the participating judges, appellate government counsel's petition for reconsideration of that case to the Court of Military Appeals was denied.

*United States v. Davis,* 9 M.J. 255 (C.M.A. 1980) (petition for reconsideration). Chief Judge Everett posited that such a denial by an equally divided court left the decision without precedential effect. *United States v. Davis,* 9 M.J. 255 (C.M.A.1980) (petition for reconsideration) (Everett, C.J., memorandum to denial of government's petition for reconsideration) (construing *United States v. Davis,* 8 M.J. 79 (C.M.A.1979) (summary disposition)).[5]

The question remains, therefore, whether the character of a military barracks room is similar enough to a home or private dwelling to make the Supreme Court's holding in *Payton* applicable to apprehensions therein. *Payton* concerns a zone of privacy in a private dwelling which is defined as being a place bounded by unambiguous physical dimensions to which an individual has a right to retreat to be free from unreasonable government intrusions. The decision was based on the common law principle which gave special protection to the sanctity of the home. A military barracks room never possessed this historic tradition of being free from government intrusion or a sanctuary. Unlike a private dwelling, and as in the facts of this case, a barracks room is subject to inspection if the primary purpose for the intrusion is to ensure the security, military fitness, and good discipline of the unit. *United States v. Middleton,* 10 M.J. 123 (C.M.A.1981); Manual for Courts–Martial, United States, 1984, Military Rule of Evidence 313 (hereinafter Mil.R.Evid.). As indicated in the Air Base Dormitory Standards and Policy, the commander could regulate conduct in the barracks that he could not control in a private home, i.e., prohibit the consumption of alcohol, prohibit stor-

---

**3.** The Court of Military Appeals has ruled that there is no requirement to obtain authorization from a commander or magistrate before effecting a probable cause apprehension in a barracks hallway because a hallway is a public area. *United States v. Tipton,* 16 M.J. 283 (C.M.A. 1983).

**4.** Although the Air Force referred to the living area for soldiers and airmen residing at Little Rock Air Base as dormitories, the room had the same characteristics as a military barracks room.

**5.** After the Supreme Court's decision in *Payton,* the Court of Military Appeals upheld probable cause searches of transient billets without prior authorization based upon exigent circumstances, *United States v. Ayala,* 26 M.J. 190 (C.M.A.1988), and of military barracks rooms, *United States v. Phinizy,* 12 M.J. 40 (C.M.A. 1981); *United States v. Murray,* 12 M.J. 139 (C.M.A.1981).

age of weapons, and prohibit visits by members of the opposite sex at certain times. The commander could also move a soldier from a barracks room or assign roommates without the soldiers consent.

■ Accordingly, in view of the minimal intrusion which results from entry into a barracks room for the purpose of making an apprehension, as opposed to the greater intrusion necessary for a search, and in view of the lesser expectation of privacy in a barracks room, we find that there was not such a reasonable expectation of privacy in the appellant's room that *Payton* would apply.[6] Hence, we hold that the warrantless apprehension of the appellant in this type of barracks room did not violate the fourth amendment and was, therefore, lawful. We also hold that Rules for Courts-Martial 302(d)(2) and (e)(2) do not violate the fourth amendment.

■ We find that the government agents were acting upon a reasonable belief that offenses had been committed and the appellant was the perpetrator, so there existed probable cause to apprehend the appellant. We find that the ski mask, which was readily observable when the appellant rolled over after being awakened by the military police investigator, was in plain view and properly seized. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Additionally, we find that the ground burst simulator was properly seized after being discovered during a pat-down search for weapons after the appellant had been apprehended. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Mil. R.Evid. 314(g). Accordingly, we hold that the military judge ruled correctly ruled in admitting this evidence.

We now turn to the appellant's personal assertions that he was deprived of the effective assistance of counsel because his military counsel recommended waiving the Article 32 investigation; misinformed him on the affirmative defense of intoxication to crimes requiring specific intent; and failed to present evidence showing the appellant could not have obtained the Army-issue nightshirt that was found at the scene of the crime.

■ The appellant did not want to return to Little Rock Air Base for the Article 32 investigation because he did not want to give the victim the opportunity to identify him as the assailant. The trial defense counsel also did not want to give the government any insight into the defense strategies. Accordingly, the decision to waive the Article 32 investigation was a reasonable defense tactic. The appellant was properly informed of his right to an Article 32 investigation by trial defense counsel and by the military judge. He knowingly signed a waiver of the investigation.

■ The appellant's allegation that he was not advised of the affirmative defense of intoxication with respect to the offenses of burglary and indecent assault is unfounded. The defense presented evidence through the testimony of the appellant, that he drank large quantities of beer and some whiskey the day and early morning before the alleged offenses occurred. The defense counsel, in his closing argument, also mentioned that the appellant was intoxicated. This corroborates the trial defense counsel's assertions in his affidavit that he advised the appellant that voluntary intoxication was a defense to the burglary and indecent assault charges, and that the notation in trial defense counsel's response to the post-trial recommendation that "voluntary intoxication is not a defense to any offense the accused was found guilty of ..." was a typographical error.

■ The appellant's assertion that his trial defense counsel was ineffective because he failed to present evidence that appellant could not have obtained the Army-issued nightshirt found at the scene of the crime likewise lacks merit. The nightshirt was not admitted into evidence; therefore, evidence that the appellant could

---

6. See *Payton*, 445 U.S. at 580 n. 13, 100 S.Ct. at 1376 n. 13, for a discussion of the relative incur- sions on privacy occurring with searches and apprehensions.

not have obtained that shirt would not be relevant.

The standard for measuring claims of ineffectiveness of counsel is set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This standard has been adopted for courts-martial. *United States v. Scott,* 24 M.J. 186, 187 (C.M.A.1987). Under *Strickland,* the appellant must first show that his defense counsel's performance was deficient, and second, the deficient performance prejudiced the defense so as to deprive appellant of a fair trial. 466 U.S. at 687, 104 S.Ct. at 2064. After carefully considering the affidavit of appellant and both trial defense counsel, we are convinced that the trial defense counsels' conduct were within the standards set forth in *Strickland v. Washington.*

We have also considered appellant's contention that his sentence is too severe and find it to be without merit.

Finally, we have considered the remaining errors personally asserted by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge CREAN and Judge HAGAN concur.