**UNITED STATES, Appellee**

v.

**Stephen P. VISSER, Staff Sergeant U.S. Air Force, Appellant.**

No. 93–0256.
CMR No. 28845.

U.S. Court of Military Appeals.

Argued Jan. 6, 1994.

Decided Aug. 17, 1994.

For Appellant: *Captain Eric N. Eklund* (argued); *Lieutenant Colonel Frank J. Spinner and Captain David D. Jividen* (on brief); *Colonel Terry J. Woodhouse and Colonel Jay L. Cohen.*

For Appellee: *Major Barnard N. Madsen* (argued); *Colonel Richard L. Purdon, Lieutenant Colonel Jeffery T. Infelise, Major Paul H. Blackwell, Jr., Captain Jules D. Silberberg* (on brief).

## Opinion of the Court

SULLIVAN, Chief Judge:

In March of 1990, appellant was tried by a general court-martial at McGuire Air Force Base, New Jersey. He was found guilty of four specifications of stealing private property from other servicemembers and two specifications of stealing military property of the United States, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. The members sentenced him to a dishonorable discharge, confinement for 3 months, total forfeitures, a $500 fine,[1] and reduction to pay grade E–1. On August 9, 1990, the convening authority approved the adjudged sentence. On September 4, 1992, the Court of Military Review affirmed the findings and sentence in an unpublished opinion.

On April 30, 1993, this Court granted review on the following issue:

> WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY REFUSING TO GRANT TRIAL DEFENSE COUNSEL'S MOTION TO SUPPRESS EVIDENCE OBTAINED FROM THE ILLEGAL SEARCH OF APPELLANT'S HOUSEHOLD GOODS.

We hold that the military judge did not err in refusing to suppress physical evidence seized as a result of a search of appellant's household goods at the Cherry Hill Moving and Storage Company on November 14, 1989. *See United States v. LaFrance,* 879 F.2d 1 (1st Cir.1989); *see also United States v. Van Leeuwen,* 397 U.S. 249, 90 S.Ct. 1029, 25

L.Ed.2d 282 (1970). *See generally* Mil. R.Evid. 316, Manual for Courts–Martial, United States, 1984.

The military judge made the following factual findings concerning the search of the household goods challenged in this case:

I find, by a preponderance of the evidence, as follows:

1. On 17 October 1989, the accused made application with the 438th APS/TRTH, TMO, McGuire Air Force Base, New Jersey, requesting shipment and/or storage of his personal property. On that day, he was counseled by Mrs. Robinson concerning the shipment process. As part of that counseling, Mrs. Robinson went over a Personal Property Checklist with the accused. Mrs. Robinson also counseled the accused concerning the shipment of unauthorized items, as well as the Quality Control Inspector and its function. Under relevant DoD regulations and Air Force regulations, the carrier is expected to pack and unpack household goods. Further, the packing process is subject to inspection of the Quality Control Inspector. These inspections may occur either at the origin of the shipment or the destination.

2. In the early morning of 7 November 1989, Staff Sergeant Francis Reynolds, a Security Police investigator, observed a small boat and trailer attached to the accused['s] car, parked in a lot near Gate number 1 on McGuire Air Force Base, New Jersey. Staff Sergeant Reynolds perceived that the tires on the accused's trailer seemed smaller than appropriate for the size of the trailer.

3. Reynolds was aware of a recent complaint of boat trailer tires being stolen from the Morale, Welfare and Recreation [(MWR)] storage lot at McGuire Air Force Base. Later that morning, Sergeant Reynolds reviewed the various reports of stolen boating equipment on file at his office. He, then, contacted Captain Gordon Hammock, 438th Air Base Group,

---

1. Appellant was sentenced "to be further confined until said fine is paid, but for not more than 1 month."

JA [judge advocate], and reported his suspicion that the tires on the accused's boat trailer might be stolen property.

4. Captain Hammock advised Reynolds to contact Sergeant Forand, the victim of the tire theft, to determine if he could identify the tires. Sergeant Reynolds contacted Sergeant Forand and asked him to go to the parking lot outside the accused's billeting quarters to examine the trailer tires. After doing so, Sergeant Forand reported back that one of the tires had an unusual wear mark similar to the wear mark on one of his tires that had been stolen.

5. Reynolds requested assistance with his investigation, and Master Sergeant Pat Williams, 438 SPS/SPOI [security police], was detailed to assist him. Sergeants Reynolds and Williams contacted the accused, advised him that the tires on his trailer were identified as stolen, and requested permission to search the boat.

6. The accused consented to the search of his boat. The search revealed a blue folding boat seat, two marine batteries, the stand for a fishing seat, a blue tarp and a swivel jack. Because similar items had previously been reported stolen, the investigators seized the blue folding boat seat, batteries and fishing seat stand. The trailer tires were not seized at that time.

7. At 1225 hours, the accused made a sworn statement in which he denied having a trolling engine or pro seat in his household goods. He did orally state that he had another blue seat in his possession in his household good ... goods shipment. At 1510 hours, ...

* * *

He did orally state that he had another blue seat in his possession. At 1510 hours, the investigators returned and seized the tires and rims, as well as a blue tarpaulin which had been covering the boat interior. The tarpaulin was seized based upon a report that a similar item had been stolen from the MWR storage lot.

8. Staff Sergeant Howard later identified the blue seat as his. He had previously filed a 4 November 1989 report, stating that he was missing two blue boat seats, a trolling engine, a vinyl boat cover and a bike (pro) stand with seat. The search of the boat also revealed a swivel jack. This swivel jack had previously been reported missing, by Sergeant Feliciano, from the MWR lot.

9. The investigators suspected that a search of the accused's household goods might disclose other stolen property. Specifically, the investigators believed they might find the other missing property of Sergeant Howard; that is, a blue seat with white trim, a trolling engine and a stand-up pro seat. The household goods had been packed and picked up on 6 November 89 in preparation for the accused's separation from the Air Force and return to Flint, Michigan. The legal office, then, determined that they would have to put a hold on the accused's household baggage. They discovered that the property was on a truck owned by the Cherry Hill Moving and Storage Company in Moorestown, New Jersey.

10. Captain Hammock, then, directed the TMO to order the ... that is, Traffic Management Office, to order the moving and storage company to hold the property pending further instructions. This occurred late in the afternoon of 7 November 1989.

11. On the morning of 8 November 1989, Williams, in coordination with TMO and Staff Judge Advocate, prepared a letter to the moving and storage company formally directing that the accused's property be held. Williams went to the moving and storage company to serve the letter and to ensure that the accused did not remove any property from the shipment. Williams requested that the accused's cargo be segregated from the other property stored at the moving and storage company facility. Williams was nearby while the accused's property was unloaded from the truck and placed into the warehouse. When Williams arrived, the property was already being off-loaded by the moving and storage company employee.

12. While on the telephone some 10 yards away, Williams observed the unloading of

the accused's property. He saw a Minnkota 765 trolling motor taken off the truck. He also saw a chair he believed was government property. Williams was aware that a trolling motor of that make and model had previously been reported stolen by Howard. Williams questioned the driver about other property he might have seen in the course of packing and moving the household goods. The driver specifically stated that he had not seen a blue boat seat or other boating equipment. Williams observed a straight-back chair being unloaded from the truck containing the accused's property. He believe the chair was government property.

13. On 8 November 1989, at 1435 hours, the accused was asked to consent to a search of his household goods. He refused. At the time he refused, the accused stated he could not give his consent because he had items of government property in the household goods shipment. These items were issued to him and he was required to turn in ... turn them in, but he did not. The accused was readvised of his rights and agreed to answer questions. In the course of the interrogation, the accused was informed that the investigators had seen the trolling motor in his household goods. The accused terminated the interview and requested counsel.

14. On 14 November 1989, the security police investigators made application to the Federal Magistrate for a search warrant. As evidence of probable cause, the investigators provided the magistrate a sworn affidavit by Master Sergeant Williams. Among other .things, the warrant authorized the seizure of "U.S. Government and/or U.S. Air Force property of an unknown nature, but including at least a straightback chair."

15. Reynolds and Detective Lamb decided what should be seized. They seized government property ... let me see—government-type property upon viewing it and noting stock numbers or other information indicating it was USAF property. This seizure was based upon the warrant issued by the Federal Magistrate.

--------

Appellant was found guilty of stealing both private and government property in violation of Article 121. Prior to trial, he made a motion to suppress any evidence of these thefts obtained by the prosecution as a result of the unlawful search and seizure of his household-goods shipment by Air Force Security Police on November 14, 1989. *See* Mil.R.Evid. 311(c)(1). This evidence consisted *inter alia*, of a boat motor (specification 1 of the Charge); a Kevlar helmet and one gas mask (specification 3, Additional Charge); and one flak vest (specification 5, Additional Charge). This defense motion was denied by the military judge, and its denial was affirmed by the Court of Military Review.

More particularly, appellant asserted that the search of his household goods and seizure of the above evidence by security police pursuant to a civilian search warrant on the above date was unlawful for three reasons. *See generally* Mil.R.Evid. 311(c)(1). *First,* he argued that the above search and seizure were tainted by the earlier unlawful security police detention of his household-goods shipment *from November 7, 1989, to November 14, 1989.* *Second,* he argued that the November 14 search and seizure were also tainted by an earlier unlawful security police search of these household goods *on November 8, 1989.* In particular, he contended that the unloading of his household-goods shipment from a truck to a storage area of the moving company in the presence of the security police was an unlawful search. *Finally,* he argued that the search warrant issued by the federal magistrate on *November 14, 1989,* was constitutionally defective because of its unlawful basis as noted above and its lack of specificity.

I

*LAWFUL DETENTION*

█ Appellant's initial argument is that the detention of his household goods for 7 days by government investigators and their agents violated his rights under the Fourth Amendment. The Supreme Court has said that a Fourth Amendment " 'seizure' of prop-

erty occurs when there is some meaningful interference with an individual's *possessory* interest in that property." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) (emphasis added). We initially conclude that appellant has not shown that any possessory interest on his part was interfered with by the detention of his property from November 7, 1989, to November 14, 1989. *See generally Adlerman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

A person's *"possessory* interest" in property "derives from rights in property delineated by the parameters of law, in this case, contract law." *United States v. LaFrance,* 879 F.2d at 7 (emphasis added), *citing United States v. Jacobsen,* 466 U.S. at 122 n. 22, 104 S.Ct. at 1661 n. 22. *See also United States v. Johns,* 851 F.2d 1131, 1135, 1136 (9th Cir.1988), *cert. denied,* —— U.S. ——, 112 S.Ct. 3046, 120 L.Ed.2d 913 (1992). Here, the record shows that appellant requested in writing that the government transport his household goods at government expense from November 6 to November 14, 1989. It also shows that appellant agreed to the Government's conditions for moving his goods and did not impose any conditions preserving his possessory interests in his goods during their transit. Finally, the record established that appellant voluntarily surrendered his household goods to the private moving company which contracted with the Government for this approved government-funded move. In these circumstances appellant has simply failed to show under the Fourth Amendment that there was any interference with his possessory interest in his household goods during their transit. *See United States v. Puglisi,* 723 F.2d 779, 787–

88 (11th Cir.1984); *United States v. Goldstein,* 635 F.2d 356 (5th Cir.), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 972 (1981). *But see* L. Simpson, *Handbook of The Law of Contracts* 241–59 (2d ed. HB 1965).

▮▮ Assuming some possessory interest of appellant in his household goods during their transit period was interfered with, we are also not persuaded that a Fourth Amendment violation occurred as a result of the 7–day detention in this case. *See United States v. LaFrance,* 879 F.2d at 7. The Fourth Amendment prohibits only "meaningful interference" with a person's possessory interests, not government action which is reasonable under the circumstances. *See United States v. Jacobsen, supra.* Temporary detention based on reasonable suspicion is a recognized example of reasonable government action. *United States v. Van Leeuwen,* 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). In appellant's case we conclude that the 7–day hold on his military household-goods shipment for purposes of obtaining a civilian search warrant was reasonable government action.

We initially note that the Supreme Court has held that temporary detention of first-class mail for 29 hours for purposes of obtaining a search warrant was not unreasonable government conduct in violation of the Fourth Amendment. *United States v. Van Leeuwen, supra.* There the detention was based on existence of reasonable suspicion. Here, the detention was initially based on reasonable suspicion[2] which after 1 day evolved into probable cause. *See generally United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).[3]

---

**2.** The basis of this suspicion was in part the stolen tires on appellant's trailer located in a parking lot in open view. *See Texas v. Brown,* 460 U.S. 730, 737–39, 103 S.Ct. 1535, 1540–41, 75 L.Ed.2d 502 (1983); *Brown v. State,* 15 Md. App. 584, 292 A.2d 762 (1972).

**3.** Under the plain-view doctrine, the security police without a warrant could have lawfully seized the items of stolen
property visible in his household-goods shipment. *See Soldal v. Cook County, Ill.,* [—— U.S. ——, ——], 113 S.Ct. 538, 547, [121 L.Ed.2d

450] (1992); *Horton v. California,* 496 U.S. 128, 136–38, 110 S.Ct. 2301, 2308, [110 L.Ed.2d 112] (1990); *Arizona v. Hicks,* 480 U.S. 321, 325–29, 107 S.Ct. 1149, 1153–54, [94 L.Ed.2d 347] (1987). Their incriminating character was "immediately apparent," and the security police were lawfully on the moving company's property. *Id.*

The security police could not have lawfully seized the sealed containers among his household-goods shipment because their contents' incriminating character was not "immediately apparent." Assuming probable cause existed to

Admittedly, the detention of appellant's property was for 7 days, a significantly longer period than in *Van Leeuwen. See United States v. Dass,* 849 F.2d 414 (9th Cir.1988). *But see United States v. Mayomi,* 873 F.2d 1049, 1054 n. 6 (7th Cir.1989); *United States v. Mulder,* 889 F.2d 239, 241 (9th Cir.1989) (2–year delay). Nevertheless, this was not a case involving the U.S. mail but rather was one involving a government-contracted move of a servicemember's household goods held by a private moving company off base in the civilian community. The security policeman had to get a civilian warrant from a magistrate to search this property. Finally, as noted above, the period of detention to secure this warrant did not exceed the 7–day transit period during which appellant himself had agreed to be without possession of his goods. *See United States v. Aldaz,* 921 F.2d 227, 231 (9th Cir.1990), *cert. denied,* 501 U.S. 1207, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991); *United States v. Claps,* 818 F.Supp. 1417, 1419 (D.Co.1993). *Cf. United States v. LaFrance, supra.* We see no government unreasonableness in these circumstances. *See generally Parker v. Levy,* 417 U.S. 733, 758, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974).

## II

### *LAWFUL VIEWING OF UNPACKAGED ITEMS*

■ Appellant's second attack on the November 14, 1989, search and seizure of his household goods was that it was preceded by and predicated on an earlier illegal search by the security police. In particular he contended that his goods were unlawfully searched when the moving company unloaded his goods from the assigned moving company truck to an area in its warehouse in the presence of security police. He contended that his legitimate expectation of privacy in this shipment was infringed when the unpackaged contraband was exposed to the security police and their observations were later used to justify a civilian warrant authorizing search of the entire shipment including packaged containers. We disagree.

As noted earlier in this opinion, the defendant has the burden to show that he has standing to challenge government action as a Fourth Amendment violation. *See Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Under this Amendment "[a] 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen,* 466 U.S. at 113, 104 S.Ct. at 1656. The Supreme Court has repeatedly held that, where a person turns over his property to a third party without taking steps to preserve his privacy, he reasonably risks its exposure to the public and police. *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980); *United States v. Miller,* 425 U.S. 435, 443, 96 S.Ct. 1619, 1624, 48 L.Ed.2d 71 (1976). *See United States v. Ayala,* 26 MJ 190, 192 (CMA 1988). Moreover, other federal courts have also held that there is no reasonable expectation of privacy in the external facade of shipped goods with respect to private carriers and authorized invitees. *United States v. Osunegbu,* 822 F.2d 472, 479 (5th Cir.1987); *United States v. Novello,* 519 F.2d 1078 (5th Cir.1975), *cert. denied,* 423 U.S. 1060, 96 S.Ct. 797, 46 L.Ed.2d 651 (1976); *United States v. Piet,* 498 F.2d 178, 181 (7th Cir.), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 664 (1974). Accordingly, no unlawful search occurred in appellant's case when the moving company simply exposed unpackaged items within its truck to security police properly on the moving company's premises. *See United States v. Wisniewski,* 21 MJ 370 (CMA), *cert. denied,* 476 U.S. 1160, 106 S.Ct. 2281, 90 L.Ed.2d 723 (1986). *See also United States v. Melucci,* 888 F.2d 200, 202 (1st Cir.1989).

## III

### *VALID WARRANT*

■ Appellant's remaining challenge to the search of his household goods on Novem-

believe these containers contained evidence of a crime or contraband, they still could be seized immediately only if exigent circumstance existed. *See United States v. Place,* 462 U.S. 696, 701, 103

S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983); *United States v. Villarreal,* 963 F.2d 770, 776 (5th Cir 1992).

ber 14, 1989, is that it was accomplished pursuant to a defective warrant. In particular, he avers that the warrant's use of broad generalized descriptions in effect authorized a general exploratory search for criminal evidence in violation of the Fourth Amendment. We disagree.[4]

The federal civilian search warrant authorized the police to seize the following items.

### ITEMS TO BE SEARCHED FOR AND SEIZED

U.S. Government and/or U.S. Air Force property of an unknown nature, but including at least a straight-back chair.

Personal property reported as stolen from the Morale, Welfare, and Storage Lot on McGuire AFB, New Jersey. Such property to be searched for and seized includes the following:

Minnkota 760 boat trolling engine

Boat stand-up pro seat

Blue in color folding chair with white trim

Blue in color boat cover with a yellow nylon rope

Kidde Fire Extinguisher

Two Stow–A–Way deep cycle batteries

All of which are fruits, instrumentalities, and evidence of crimes against the United States of America, that is, larceny of U.S. government property and larceny of personal property, in violation of Title 18, United States Code, Sections 641 and 661.

We see no problem with the specificity of these descriptions. *See generally United States v. Hartsook,* 15 USCMA 291, 295, 35 CMR 263, 267 (1965) ("at least a designation by general terms of the class of . . . property to be searched for and seized"); *United States v. DeLuna,* 763 F.2d 897, 908 (8th Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985); *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976).

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX, CRAWFORD, GIERKE, and WISS concur.

---

4. Appellant's argument that the warrant was defective because it was issued by the magistrate who was uninformed about a prior illegal seizure and search fails for reasons stated in Parts I and II of this opinion.